UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: _____ |
| ) | |
| COMMONWEALTH OF ) | |
| PENNSYLVANIA AND ) | |
| PENNSYLVANIA STATE POLICE, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff, the United States of America ("United States"), alleges:

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"). As set forth below, the United States alleges that, since 2003 and continuing through the present, Defendants, the Commonwealth of Pennsylvania ("Commonwealth") and the Pennsylvania State Police ("PSP"), have used and continue to use physical fitness tests to screen and select applicants for entry-level state police trooper positions. Through the use of these physical fitness tests, Defendants have engaged in a pattern or practice of employment discrimination against women in PSP's selection process for entry-level trooper positions in violation of Title VII.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

3. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

4. Defendants Commonwealth and PSP are public employers created pursuant to the laws of the Commonwealth.

5. The Commonwealth is a state government, and PSP is a governmental agency, within the meaning of 42 U.S.C. § 2000e(a).

6. Defendants are "persons" within the meaning of 42 U.S.C. § 2000e(a) and are "employers" within the meaning of 42 U.S.C. § 2000e(b).

7. PSP is a state law enforcement agency that employs entry-level troopers.

8. Defendants are responsible for establishing the terms and conditions of, as well as other practices that relate to, the employment of entry-level troopers.

9. Defendants have maintained and continue to maintain selection procedures by which applicants for entry-level trooper positions are selected.

## FACTS

### A. Challenged Employment Practices

10. Since 2003, the selection process for entry-level troopers has included the following steps: (1) an application screening; (2) a written examination; (3) an oral examination; (4) ranking on an eligibility list; (5) physical readiness processing, which includes a physical fitness test ("PFT"); (6) a polygraph examination; (7) a background investigation; and (8) medical/psychological processing. Through this lawsuit, the United States challenges the fifth element of Defendants' entry-level trooper hiring process: the physical readiness processing of applicants, specifically Defendants' use of PFTs.

### B. The PFT Used Between 2003-2008

11. From 2003 to 2008, PSP administered and used a PFT ("2003 PFT") as part of its entry-level trooper selection process. The 2003 PFT consisted of five events: (1) a 300-meter run; (2) sit-ups; (3) push-ups; (4) a vertical jump; and (5) a 1.5-mile run. The 2003 PFT had cut-off scores for each event.

12. PSP required that applicants for entry-level trooper positions pass each event in the 2003 PFT to continue in the selection process for entry-level trooper positions. If an applicant failed an event, s/he failed the 2003 PFT.

13. From 2003 to 2008, approximately 94% of male applicants passed the 2003 PFT, while only approximately 71% of female applicants passed the 2003 PFT.

14. The difference between the pass rates of female and male applicants from 2003 to 2008 is statistically significant, and the female pass rate is less than 80% of the male pass rate.

15. Considered separately, the female pass rate was lower than the male pass rate for each administration of the 2003 PFT from 2003 to 2008. Moreover, for nearly half of the application periods from 2003 to 2008, the difference in pass rates between female and male applicants is statistically significant, and the female pass rate was less than 80% of the male pass rate.

### C. The PFT Used Between 2009 and the Present

16. In 2009, PSP changed the PFT used as part of the entry-level trooper hiring process ("2009 PFT"). The 2009 PFT included new elements.

17. For the 2009 to 2012 application periods, approximately 98% of male applicants passed the 2009 PFT, while approximately 72% of female applicants passed the 2009 PFT.

18. The difference between the pass rates of female applicants and male applicants from 2009 to 2012 is statistically significant, and the female pass rate is less than 80% of the male pass rate.

19. Considered separately, the female pass rate was lower than the male pass rate for each administration of the 2009 PFT from 2009 to 2012. Moreover, for a majority of the application periods from 2009 to 2012, the difference in pass rates between female and male applicants is statistically significant, and the female pass rate was less than 80% of the male pass rate.

20. Because female applicants failed the 2003 PFT and 2009 PFT at statistically higher rates than male applicants, female applicants were less likely to proceed through the selection process and thus less likely to be hired as entry-level troopers.

21. If, between 2003 and 2012, female applicants had passed the 2003 PFT and 2009 PFT at the same rate as male applicants, approximately 119 additional women would have been available for further consideration for the position of entry-level trooper, resulting in approximately 45 additional women being hired as entry-level troopers.

22. PSP continues to use the 2009 PFT, or a substantially similar physical fitness test, in the screening and selection of applicants for entry-level trooper positions.

23. PSP's use of the 2003 PFT and 2009 PFT in the screening and selection of applicants for entry-level trooper positions has had, and is alleged to still have, a disparate impact on women.

## THE UNITED STATES' PATTERN OR PRACTICE CLAIMS PURSUANT TO SECTION 707 OF TITLE VII

24. Plaintiff re-alleges and incorporates by reference paragraphs 1-23.

25. Defendants' use of the 2003 PFT and 2009 PFT in the screening and selection of applicants for entry-level trooper positions with PSP has resulted in a disparate impact upon female applicants for those positions. Defendants' use of both the 2003 and the 2009 PFT is not job-related for the entry-level trooper position, is not consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

26. There are alternatives, to PSP's use of the 2003 PFT and 2009 PFT, for screening and selecting applicants for entry-level trooper positions, that have less disparate impact on women and would serve PSP's legitimate interests.

27. Defendants have used and continue to use policies and practices that discriminate against women and that deprive or tend to deprive women of employment opportunities because of their sex, in violation of Title VII, 42 U.S.C. § 2000e-2, including, among other ways, by:

   a. failing or refusing to hire women for entry-level trooper positions on the same basis as men;

b. using the 2003 PFT and 2009 PFT in the screening and selection of applicants for entry-level trooper positions where such use results in disparate impact on women and is not job-related for the position in question and consistent with business necessity;

c. failing or refusing to take appropriate action to correct the present effects of their discriminatory policies and practices; and

d. failing or refusing to "make whole" those female applicants for the position of entry-level trooper who have been harmed by their unlawful use of the 2003 PFT and 2009 PFT.

28. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the United States Department of Justice, conducted an investigation of the policies and practices of Defendants regarding the screening and selection of applicants for entry-level trooper positions with PSP and the discriminatory effect of such practices on female applicants. The Department of Justice notified Defendants of that investigation and of the United States' determination that the policies and practices outlined in paragraphs 10-23 are unlawful.

29. The policies and practices of Defendants outlined in paragraphs 10-23 above constitute a pattern or practice of resistance to the full enjoyment by women of their rights to equal employment opportunities regardless of their

sex, in violation of Title VII, 42 U.S.C. § 2000e-2. The pattern or practice is of such a nature that it denies the full exercise of the rights secured by Title VII. Unless restrained by an order of this Court, Defendants will continue to use policies and practices that are the same as or similar to those alleged in this Complaint.

30. All conditions precedent to the filing of suit have been performed or have occurred.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays for an order enjoining Defendants, their officers, agents, employees, successors, and all persons in active concert or participation with them, from engaging in discriminatory employment practices against women based on their sex in violation of Title VII, and specifically from:

    a. failing to hire women for entry-level trooper positions with PSP on an equal basis as men;

    b. using the 2003 PFT and 2009 PFT in the screening and selection of applicants for entry-level trooper positions where such use results in disparate impact on women and is not job-related for the position in question and consistent with business necessity;

    c. failing or refusing to provide make-whole relief, including backpay with interest, offers of employment, retroactive seniority, and other

benefits to women who have suffered losses or will suffer losses as a result of the discriminatory policies and practices alleged in this Complaint; and

d. failing or refusing to take other appropriate measures to overcome the effects of their discriminatory policies and practices.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Dated: July 29, 2014

           Respectfully submitted,

           JOCELYN SAMUELS
           Acting Assistant Attorney General
           Civil Rights Division
           United States Department of Justice

By:   s/*Delora L. Kennebrew*_____
           DELORA L. KENNEBREW (GA 414320)
           Chief
           Employment Litigation Section

           s/*Karen D. Woodard*_____
           KAREN D. WOODARD (MD no number)
           Deputy Chief
           Employment Litigation Section

           s/*Carol A. Wong*_____
           s/*Trevor S. Blake II*_____
           CAROL A. WONG (IL 6294123)
           TREVOR S. BLAKE II (DC 974319)
           Senior Trial Attorneys
           United States Department of Justice
           Civil Rights Division
           Employment Litigation Section
           950 Pennsylvania Avenue, NW, PHB
           Washington, DC  20530
           Telephone:  (202) 616-9100
           Fax:  (202) 514-1105
           E-mail:  Carol.Wong@usdoj.gov
           E-mail:  Trevor.Blake@usdoj.gov

           Attorneys for the United States of America