IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| **Plaintiff** : | 1:14-CV-1474 |
| : | |
| v. : | |
| : | |
| **COMMONWEALTH OF PENNSYLVANIA, and the PENNSYLVANIA STATE POLICE,** : | |
| : | **Judge Sylvia H. Rambo** |
| **Defendants** : | |

## M E M O R A N D U M

In this employment discrimination action, the United States Attorney General sued the Commonwealth of Pennsylvania, alleging that the Commonwealth of Pennsylvania has engaged in a "pattern or practice" of unlawful discrimination against females applying for employment as an entry level trooper with the Pennsylvania State Police, resulting in disparate impact in violation of Title VII of the Civil Rights Act of 1964. Presently before the court is the Commonwealth of Pennsylvania's motion to dismiss, disposition of which requires the court to determine whether Section 707(a) of Title VII confers authority upon the United States to assert a disparate impact claim against a state. For the following reasons, the court determines that such a disparate impact claim is not foreclosed by statute and concludes that the United States has made a sufficient showing that this court has subject matter jurisdiction.

**I.      Background**

The United States initiated this action by filing a complaint on July 29, 2014, asserting that the Commonwealth of Pennsylvania ("Commonwealth") and the Pennsylvania State Police ("PSP") (collectively, "Defendants") have violated Title

VII of the Civil Rights Act 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). (Doc. 1.) More specifically, the United States alleges that Defendants' use of physical fitness tests to screen and select applicants for entry-level PSP trooper positions has had an unlawful disparate impact against female applicants, who have passed the physical fitness tests—and thus been hired—at significantly lower rates than male applicants. (*Id.* at ¶¶ 20-21, 23, 25, 27(b).)

According to the complaint,[1] the PSP administered two versions of the physical fitness test between 2003 and 2012. The first version, which was administered between 2003 and 2008 ("2003 PFT"), required applicants to pass five events to continue in the selection process: (1) a 300-meter run; (2) sit-ups; (3) push-ups; (4) a vertical jump; and (5) a 1.5-mile run. (*Id.* at ¶¶ 11-12.) Approximately 94 percent of male applicants and 71 percent of female applicants passed the 2003 PFT. (*Id.* at ¶ 13.) The PSP revised the test in 2009 ("2009 PFT), and during the 2009 to 2012 application periods in which the 2009 PFT was administered, approximately 98 percent of male applicants and 72 percent of female applicants passed the physical fitness test. (*Id.* at ¶¶ 16-17.) The United States asserts that the disparity between male and female pass rates on both the 2003 and 2009 PFTs is statistically significant because the female pass rate was less than 80 percent of the male pass rate. (*Id.* at ¶¶ 14-15, 18-19.) The United States avers that, if female applicants had passed the 2003 and 2009 PFTs at the same rate as male applicants, approximately 119 additional women would have been available for further consideration for the entry-level trooper position, resulting in approximately 45 additional women being hired.

---

[1] As required when deciding a motion to dismiss, the court will accept as true the well-pleaded factual averments set forth in the complaint and view them in the light most favorable to the United States as the nonmoving party.

(*Id.* at ¶ 21.)  The PSP continues to use the 2009 PFT, or a substantially similar version, in its screening and selection process for entry-level troopers.  (*Id.* at ¶ 22.)

Defendants have moved to dismiss the United States' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 26.) Primarily, Defendants urge the court to dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Title VII's Section 707(a), 42 U.S.C. § 2000e-6(a), pursuant to which the United States filed this suit, only confers authority upon the United States to bring claims for disparate treatment and, therefore, the court lacks subject matter jurisdiction over the instant claim for disparate impact.  In the alternative, Defendants argue that the complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, citing insufficient disparities between the male and female PFT pass rates.

The United States filed an opposition to Defendants' motion on December 22, 2014.  (Doc. 32.)  In its opposition, the United States contends that Defendants' argument regarding the United States' purported lack of authority to bring disparate impact claims rests on an erroneous interpretation of Title VII, as evidenced by both the statute when read as a whole and case law interpreting Section 707(a).  In response to Defendants' alternative argument that the United States has presented insufficient disparities between male and female PFT pass rates, the United States contends that Defendants' position fails to account for the case's current posture and the United States' ultimate burden on that issue.

In a reply filed on January 19, 2015, Defendants assert that dismissal is further warranted due to the inherent conflict between the Commonwealth's sovereignty and Section 707(a).  (Doc. 33.)  In support thereof, Defendants argue

3

that the United States has sued a constituent sovereign in a manner that implicates the police power reserved to the Commonwealth and that the court, therefore, must not "blithely perpetuate an expansion of federal authority that is not justified by the controlling statutory language." (Doc. 33 at pp. 2-4 of 17.) In a sur-reply filed on January 26, 2015,[2] the United States contends that there exists no authority for applying a heightened scrutiny standard to a Title VII case brought against a state police employer. (Doc. 35-1.)

## II.        Legal Standard

Defendants' motion seeks dismissal of the United States' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As such, the court will set forth the standards under both rules.

### A.        Motion to Dismiss—Rule 12(b)(1) Standard

Defendants seek dismissal of the complaint primarily on the basis that the court lacks subject matter jurisdiction over the United States' disparate impact claim. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and thus are permitted to adjudicate cases and controversies only as allowed under Article III of the United States Constitution. U.S. CONST. art. III, § 2. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's suit. Fed. R. Civ. P.

---

[2] The court granted the United States' unopposed motion for leave to file a sur-reply on January 27, 2015, and accepted the sur-reply as filed. (*See* Doc. 36.)

12(b)(1). When considering a challenge to the court's jurisdiction pursuant to Rule 12(b)(1), no presumption of truthfulness attaches to the plaintiff's allegations, *see Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), and the court may go beyond the four corners of the complaint and make factual findings which are decisive to the issue, relying on evidence such as affidavits, depositions, and other testimony, *Empl'rs Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990). The plaintiff ultimately bears the burden of persuading the court that it has jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B.     Motion to Dismiss—Rule 12(b)(6) Standard

Defendants also seek dismissal of the complaint on the basis that the United States has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must therefore "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of

the non-moving party.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557).  However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citing *Phillips*, 515 F.3d at 234).

**III.       Discussion**

Title VII endeavors to ensure that workplaces are free of discrimination and that employment decisions are made based on qualifications rather than on extraneous factors such as race or color.  *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (citing *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009)).  To that end, "Title VII makes it illegal for an employer to 'limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin'" *Id.* (quoting 42 U.S.C. § 2000e-2(a)(2)).  Title VII prohibits both intentional discrimination, known as disparate treatment discrimination, as well as, in some cases, practices that are not

intended to discriminate but in fact have a disproportionately adverse effect on minorities, known as disparate impact discrimination. *Ricci*, 557 U.S. at 577.

As enacted in 1964, Title VII held employers liable only for disparate treatment, making it "unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Id.* at 577 (quoting § 2000-2(a)(1)). That section retains its original wording today. *Id.* Thus, disparate treatment occurs where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988). A plaintiff in a disparate treatment case must therefore establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Id.*

In contrast, disparate impact discrimination is a brand of "unintentional discrimination," whereby "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another" are prohibited. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Although the employer acts without a deliberately discriminatory motive, its actions are functionally equivalent to intentional discrimination. *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 521 (E.D. Pa. 2006) (citing *Watson*, 487 U.S. at 987). Consequently, evidence submitted in disparate impact cases tends to focus on statistical disparities rather than specific incidents, and on competing explanations for those disparities. *Id.*

The Civil Rights Act of 1964 did not include an express prohibition on policies or practices that result in a disparate impact. *Ricci*, 557 U.S. at 578. Rather, the disparate impact theory of discrimination under Title VII was judicially created by the Supreme Court in 1971 in the seminal case of *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). Recognizing that Congress' objective in enacting Title VII was to achieve equality and remove barriers in employment, the Court held that Title VII was meant not only to proscribe overt discrimination, but also to prevent "practices that are fair in form, but discriminatory in operation." *Griggs*, 401 U.S. at 429-31.

Twenty years after *Griggs*, Congress codified the prohibition on disparate impact discrimination in the Civil Rights Act of 1991. *Ricci*, 557 U.S. at 578; *see N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 477 n.9 (noting that the Civil Rights Act of 1991 reversed a Supreme Court case that had weakened the standard for finding employment practices not a violation of Title VII). Under the statute, the plaintiff must "demonstrate[ ] that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000-e2(k)(1)(A)(i). The employer may then defend against the plaintiff's *prima facie* showing of disparate impact only by demonstrating that the practice is "job related for the position in question and consistent with business necessity." *Id.* Even if the employer meets that burden, however, the plaintiff may still succeed "by showing that alternative practices would have less discriminatory effects while ensuring that candidates are duly qualified." *N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 477 (citing 42 U.S.C. § 2000e-2(k)(1)(A)(ii),(C)).

    **A.**    **The United States' Authority to Assert a Disparate Impact Claim Under Section 707(a)**

Turning to the matter *sub judice*, Defendants argue that Section 707(a) does not confer authority upon the United States to bring a suit against a state under the disparate impact theory of discrimination. The court disagrees.

Section 707(a) permits the federal government, either through the Equal Employment Opportunity Commission or the Attorney General of the United States, to bring a civil action directly against an employer charging a pattern or practice of discrimination against a protected group. *See* 1 Lex K. Larson, *Employment Discrimination* § 8.01[3], at 8-11 (Matthew Bender 2d ed. 2014). Specifically, Section 707(a) provides that the Attorney General may bring a civil action in the appropriate district court of the United States:

> [w]henever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full employment of any of the rights secured by [Title VII], and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described . . . .

42 U.S.C. § 2000e-6(a). As used in this statute, "pattern or practice" is not a term of art. *Teamsters*, 431 U.S. at 336 n.16. Rather, "the words reflect only their usual meaning," and were intended to convey "[t]he point . . . that 'single, insignificant, isolated acts of discrimination by a single business would not justify a finding of a pattern or practice . . . ." *Id.* (quoting Sen. Hubert Humphrey's statements in 110 Cong. Rec. 14270 (1964)). A "pattern or practice would be present only where the denial of rights . . . is repeated, routine, or of a generalized nature." *Id.*

Pointing to the language of Section 707(a) that requires the "pattern or practice of *resistance* to the full enjoyment of . . . rights secured by [Title VII]" be "*intended* to deny the full exercise of [those] rights," 42 U.S.C. § 2000e-6(a) (emphasis supplied), Defendants argue that in order to establish a pattern or practice

within the meaning of the statute, the United States must demonstrate an intention to discriminate. It appears well-settled, however, that "[a] 'pattern or practice' of discrimination could be either a pattern of disparate treatment of a number of individuals, or the wide-scale application of tests or other neutral factors having disparate impact, or both." *United States v. N.Y.C. Transit Auth.*, Civ. No. 04-cv-4237, 2010 WL 3855191, *14 (E.D.N.Y. Sept. 28, 2010) (citing 1 Lex. K. Larson, *Employment Discrimination*, § 8.01[3], at 8-11 (Matthew Bender 2d ed. 2010)). Indeed, courts have "uniformly refused to read" a subjective discriminatory intent requirement into Section 707(a), "instead respect[ing] the evident congressional purpose that the statute reach conduct which is intentional in the relatively innocuous sense of advertence." *United States v. City of Yonkers*, 609 F. Supp. 1285, (S.D.N.Y. 1984) (listing cases); *see also United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 443 (5th Cir. 1971) ("[P]roof of subjective intent to discriminate is unnecessary; the Government must show only that the defendant intended to perform the discriminatory act."). For this reason, many courts, including several within the Third Circuit, have employed disparate impact analysis in pattern or practice suits. *See Lanning v. Se. Pa. Transp. Auth.*, 181 F.3d 478 (3d Cir. 1999); *see also United States v. City of Erie*, 411 F. Supp. 2d 524 (W.D. Pa. 2005); *United States v. Delaware*, Civ. No. 01-020-KAJ, 2004 WL 609331 (D. Del. Mar. 22, 2004); *see also, e.g., United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998); *United States v. Cnty of Fairfax*, 629 F.2d 932 (4th Cir. 1980), *cert. denied*, 449 U.S. 1078 (1981); *United States & EEOC v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir. 1979); *Firefighters Inst. for Racial Equality & United States v. City of St. Louis*,

549 F.2d 506 (8th Cir. 1977), *cert. denied*, 434 U.S. 819 (1977).[3]  The court agrees with these courts and finds that the United States is authorized to bring a pattern or practice claim of disparate impact discrimination under 707(a).  Indeed, by its very definition, a disparate impact analysis must focus on more than isolated occurrences and therefore lends itself to uncovering a proscribed pattern or practice.  *City of Yonkers*, 609 F. Supp. at 1285.[4]

Defendants' second argument focuses on the Commonwealth's status as a constituent sovereign to which the police power is reserved under the federal system.  In this regard, Defendants urge that the Attorney General is without authority to bring a disparate impact claim implicating the police power reserved to the Commonwealth.  Although Defendants do not challenge the ability of the United States to bring suits against states, they argue that, absent Congress' "clear and unmistakable intent" to "affect the balance between the federal government and the

---

[3]  Defendants attempt to distinguish those cases that involved private co-litigants from cases brought solely by the United States.  However, whether a case involved a private co-litigant is irrelevant to the jurisdictional issue before the court.  In both contexts, the Third Circuit and other courts have exercised subject matter jurisdiction over the United States' Section 707(a) disparate impact claims and have ruled on their merits.  *See Lanning*, 181 F.3d 478 (3d Cir. 1999).  As Defendants recognize, even if the parties do not raise the issue, a court must *sua sponte* dismiss a case when it lacks subject matter jurisdiction.  (*See* Doc. 31, p. 9 of 30); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006).

[4]  Similar language used elsewhere in Title VII has also been consistently interpreted to extend to disparate impact claims.  Section 706(g) provides that a court may order backpay, priority hiring, and other relief when it finds that the employer has "intentionally engaged . . . in an unlawful employment practice."  42 U.S.C. §2000e-5(g)(1).  Notwithstanding the section's use of the phrase "intentionally engaged," courts have routinely determined that the provision authorizes relief in disparate impact cases.  *See, e.g.*, *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 280 n.222 (2d Cir. 1981) (noting language of intent refers not to discriminatory purpose, but only that the acts must have been deliberate rather than accidental); *see also United States v. City of New York*, 905 F. Supp. 2d 438 (E.D.N.Y. 2012) (awarding backpay and priority hiring after litigated judgment in disparate impact case); *United States v. Massachusetts*, 869 F. Supp. 2d 189 (D. Mass. 2012) (same); *United States v. New Jersey*, Civ. No. 10-91(KSH)(MAS), 2012 WL 3265905 (D.N.J. June 12, 2012) (same).

states on a matter which the Constitution reserves to the states," the United States' attempt "to control a state's use of a physical readiness test of its own police force" via a Section 707(a) lawsuit must fail. (Doc. 33, pp. 3-4.)

Contrary to Defendants' argument, however, Congress has shown its clear and unmistakable intent to authorize the Attorney General to bring pattern or practice claims of disparate impact discrimination against state employers. Congress was "[u]nquestionably" aware of the *Griggs* disparate "impact standard applicable to private employers when it amended Title VII in 1972 to include state and local government employers," *United States v. Virginia*, 620 F.2d 1018, 1023 (1980), and it did so without exempting state law enforcement employers, *see* 42 U.S.C. § 2000e(a)-(b); Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 2 (1972)).[5] In addition, "the legislative history clearly indicates that the standards to be applied to [state employers] under the 1972 amendments are the same Title VII standards which were earlier made applicable to private employers." *Virginia*, 620 F.2d at 1023 (internal citations omitted); *see also* H.R. Rep. No. 92-38 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2154 ("The expansion of Title VII coverage to State and local government employment is firmly embodied in the pricinples of the Constitution of the United States.").

Moreover, Congress has not hesitated to act to clarify its intent with respect to Title VII when the courts have been mistaken. *See, e.g.*, *Ledbetter v.*

---

[5] The court would be remiss not to address Defendants' reliance on *United States v. North Carolina*, 914 F. Supp. 1257 (E.D.N.C. 1996), for its erroneous proposition that "the Supreme Court has overruled *Griggs sub silentio*," (Doc. 33, pp. 8-9 of 17 (citing *North Carolina*, 914 F. Supp. at 1265)). In the nearly two decades since the opinion was published, no court has relied on *North Carolina* for this proposition. Indeed, as recently as 2010, the Supreme Court has both relied on *Griggs* and recognized the codification in Title VII of the *Griggs* disparate impact standard. *See Lewis v. City of Chicago*, 560 U.S. 205, 211-12 (2010).

*Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *superseded by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (2009); *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166 (1991); *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), *superseded by statute*, Pregnancy Discrimination Act, Pub. L. No. 95-555 (1978). During the decades during which the Attorney General has enforced Title VII's prohibition of disparate impact discrimination pursuant to Section 707(a), Congress has amended Title VII several times, even codifying the disparate impact theory of liability and legislatively overruling more onerous, judicially imposed burdens of proof for disparate impact claims. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 105; 42 U.S.C. § 2000e-2(k). Yet Congress has never limited the Attorney General's authority to bring disparate impact claims. To the contrary, in the 1991 Amendments to Title VII, Congress identified the Attorney General as among the "complaining parties" authorized to bring a disparate impact claim. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, §§ 104-105; 42 U.S.C. § 2000e(l); 42 U.S.C. § 2000e-2(k).

Accordingly, the court finds that it has subject matter jurisdiction over Section 707(a) cases brought by the United States against a state claiming that a pattern or practice has a prohibited disparate impact, and will deny Defendants' motion to dismiss in this regard.[6]

---

[6] Defendants further argue that the court should be guided by the Supreme Court's decision to grant certiorari in a case brought pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq., *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 46 (2014). The question presented in *Inclusive Communities* is whether, based on the text of the FHA, disparate impact claims are cognizable under the FHA. Brief for Petitioner at 5, *Inclusive Communities*, 135 S. Ct. 46 (2014) (No. 13-1371), 2014 WL 1989121 at *1. Because there is
(continued...)

**B.**     **The United States' Prima Facie Case of Disparate Impact**

As an alternative basis for dismissal, brought pursuant to Federal Rule of Procedure 12(b)(6), Defendants argue that the United States has pleaded insufficient facts to establish a *prima facie* case of disparate impact discrimination under Title VII. In response, the United States contends, *inter alia*, that Defendants' argument is premature.

Under Title VII's disparate impact theory of liability, a plaintiff must establish a *prima facie* case by demonstrating that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern. *N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 476. "This *prima facie* showing requires the plaintiff to prove a significant statistical disparity and to demonstrate that the disparity" is the result of a particular employment practice. *Id.* (internal citations and quotations omitted). Statistical disparities may show causation "when those disparities are substantial and the statistical evidence is reliable." *Id.* at 477.

Relying primarily on *Hazelwood School District v. United States*, 433 U.S. 299 (1977), Defendants argue that the court must dismiss the complaint because the United States has failed to allege the "gross" statistical disparity required for its disparate impact claim to be viable. However, while a plaintiff in a disparate impact case must ultimately demonstrate a significant statistical disparity, the burden a plaintiff must meet to survive a motion to dismiss "is much less onerous." *Ladd*, 463 F. Supp. 2d at 523 (citing *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999)

---

[6](...continued)
no question that disparate impact claims are cognizable under Title VII, the grant of certiorari in *Inclusive Communities* is irrelevant. Nothing in *Inclusive Communities* casts any doubt on the continued vitality of disparate impact cases under Title VII.

(explaining the parties' burdens in a Title VI disparate impact case, which, as the *Powell* court notes, are the same for a Title VII disparate impact case). Indeed, courts have repeatedly held that defendants are "wrong" to insist that a disparate impact complaint must allege "percentages, statistics, or data demonstrating the disproportionate effect of facially neutral employment policies on a protected group." *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 906 (N.D. Ill. 2011) (listing cases). As the Third Circuit has explained:

> the *prima facie* case under disparate impact analysis is an evidentiary standard—it defines the quantum of proof [a] plaintiff must present to create a rebuttable presumption of discrimination. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim.

*Powell*, 199 F.3d at 394 (quoting *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993)). Therefore, "when a federal court reviews the sufficiency of a complaint . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Ladd*, 463 F. Supp. at 523 (quoting *Powell*, 189 F.3d at 394). At the motion to dismiss stage in a disparate impact case, the plaintiff need only plead that a facially neutral employment practice's adverse effects fall disproportionately on a group protected by Title VII. *Id.*

      Here, the complaint identifies the specific employment practice allegedly creating a disparate impact: the 2003 and 2009 PFTs. The complaint alleges that Defendants' use of the 2003 and 2009 PFTs has had a disproportionately adverse effect on female applicants for entry-level PSP trooper positions in relation to their male counterparts. Taken together, and drawing all inferences in the United States' favor, the complaint has adequately alleged that Defendants' employment

practice has had a disparate impact on women. Nothing more is required at this stage.

## IV.        Conclusion

For the foregoing reasons, the court concludes that it has subject matter jurisdiction over a Section 707(a) action brought by the United States to assert a disparate impact claim against a state. The court further concludes that the complaint in this case has stated such a claim. Accordingly, Defendants' motion to dismiss will be denied.

An appropriate order follows.

s/Sylvia H. Rambo<br>United States District Judge

Dated: May 21, 2015.